Brian L. SNODDERLY, Plaintiff,

v.

The State of KANSAS and Bev
Heinrich, Defendants.

No. 96–4044–SAC.

United States District Court,
D. Kansas.

Nov. 19, 1999.

Michael D. Burrichter, Kansas Dept. of Revenue, Topeka, KS, Frank S. Reeb, Johnson County Legal Dept., Johnson County Square, Oathe, KS, M.J. Willoughby, Office of Attorney General, Kansas Judicial Center, for defendant.

Brock R. Snyder, Law Office of Brock R. Snyder, Topeka, KS, for plaintiff.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The plaintiff, Brian L. Snodderly, alleges that he was constructively discharged from his employment in the mail room at the State of Kansas Department of Revenue by a hostile work environment which he attributes to his mental disabilities—an adjustment disorder with anxious mood and passive-aggressive personality—and physical disabilities in violation of the Americans with Disabilities Act (ADA). The plaintiff also asserts claims under 42 U.S.C. § 1983,[1] Title VII of the Civil Rights Act of 1964 and the tort of out-

rage.[2] The defendants deny liability and challenge this court's jurisdiction over the plaintiff's claims.

**Parallel State Proceedings:**

Shortly before filing this federal case, the plaintiff had filed similar or nearly identical claims in a parallel state proceeding before Franklin R. Theis, Shawnee County, Kansas, district judge. On July 30, 1998, Judge Theis granted summary judgment to the defendants on all the plaintiff's claims. The plaintiff has appealed that adverse ruling to the Kansas Court of Appeals. On January 15, 1999, the plaintiff filed his brief in the Kansas Court of Appeals. *See* Plaintiff's "Notice of Filing of Appellant's Brief in the Court of Appeals for the State of Kansas" (Dk.110). On November 5, 1999, the Kansas Court of Appeals heard oral argument on that appeal.

**Pending Motions:**

1. Motion for Summary Judgment as to breach of contract claims based upon res judicata and collateral estoppel (Dk.98).

2. Defendant's motion to dismiss (Dk.63).

3. Motion to Dismiss (Dk.113).

4. Notice of Supplemental Authority and Renewed Request for Summary Judgment as to All Claims Based upon Res Judicata and Collateral Estoppel (Dk.100).

5. Defendant's Motion for Summary Judgment (Dk.77).

**Motion for Summary Judgment as to breach of contract claims based upon res judicata and collateral estoppel (Dk.98).**

In light of the plaintiff's abandonment of his contract based claims, *see* Plaintiff's

---

1. The plaintiff "concede[s] his claims against John Lafaver in all capacities and against Beverly Heinrich in her official capacity." *See* Plaintiff's "Response to Defendant's Renewed Request for Summary Judgment Based upon Res Judicata and Collateral Estoppel" (Dk. 108 at page 2). The plaintiff still asserts his § 1983 action against Beverly Heinrich in her individual capacity.

2. The plaintiff "concede[s] to surrendering his breach of contract claim" and "his third party beneficiary contract claim." *See* Plaintiff's "Response to Defendant's Renewed Request for Summary Judgment Based upon Res Judicata and Collateral Estoppel" (Dk. 108 at page 1).

"Response to Defendant's Renewed Request for Summary Judgment Based upon Res Judicata and Collateral Estoppel" (Dk. 108 at page 1) (plaintiff "concede[s] to surrendering his breach of contract claim" and "his third party beneficiary contract claim.") this motion is denied as moot.

**Defendant's motion to dismiss (Dk.63).**

In this motion, the defendants move, *inter alia*[3], for dismissal of plaintiff's ADA and state law claims against the State of Kansas and Bev Heinrich in her official capacity based upon Eleventh Amendment immunity. The plaintiff responds, arguing that Congress abrogated state immunity when it enacted the ADA. As to his state law claims, the plaintiff argues that this court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a) because "it would be prejudicial to the plaintiff if he had to maintain two separate suits, one in federal court and one in state court when especially all of the claims arise from the same issues and facts." Plaintiff's Response to Defendant's Motion to Dismiss titled "Reply to Defendants (sic) Motion to Dismiss (Dk. 76 at 13–14)".

### Analysis

■ Since the time that the defendants' motion to dismiss was filed, the Tenth Circuit has held "that Congress's statutory abrogation of Eleventh Amendment immunity in the ADA was a valid exercise of its Section 5 enforcement powers." *Martin v. State of Kansas*, 190 F.3d 1120 (10th Cir. 1999). Consequently, this court has jurisdiction over the plaintiff's ADA claims against the State of Kansas. The defendants' motion to dismiss the plaintiff's ADA claims is denied.

■ This court lacks, however, jurisdiction over the plaintiff's state law claims against the State of Kansas and Bev Heinrich in her official capacity. *See Elephant Butte Irrigation District of New Mexico v. Dept. of Interior*, 160 F.3d 602, 607 (10th Cir.1998) ("Generally, the law considers

state officials acting in their official capacities to be acting on behalf of the state and immune from unconsented lawsuits under the Eleventh Amendment.") (*citing Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.... It is not a suit against the official personally, for the real party in interest is the entity."), *cert. denied*, —— U.S. ——, 119 S.Ct. 1255, 143 L.Ed.2d 352 (1999); *Ellis v. University of Kansas Medical Center*, 163 F.3d 1186, 1196 (10th Cir.1999) ("The Supreme Court has previously held that Congress did not abrogate the States' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Thus, because Kansas has not unmistakably waived its Eleventh Amendment immunity, and Congress has not abrogated that immunity, the Eleventh Amendment bars [the plaintiff's] suit against Kansas and its state agencies in the federal courts.") (footnote omitted); *Re v. New Vistas*, 173 F.3d 864, 1999 WL 178695 (10th Cir.1999) (Table) ("Congress did not abrogate Eleventh Amendment immunity when it enacted 42 U.S.C. §§ 1981 or 1983."), *petition for cert. filed* July 27, 1999.

Although this court has jurisdiction to hear the plaintiff's ADA claims against the State of Kansas, that finding does not establish jurisdiction over the plaintiff's supplemental claims. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 US. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (under the Eleventh Amendment, a federal court lacks jurisdiction to hear supplemental state law claims against a state although it has jurisdiction to hear federal claims against the state).

■ Contrary to the plaintiff's implicit suggestion, § 1367 (supplemental jurisdic-

---

**3.** The defendants also seek dismissal of the plaintiff's claims against Bev Heinrich in her individual capacity under Fed.R.Civ.P. 12(b)(6) and 12(h). The court denies this por-

tion of the defendants' motion without prejudice. If necessary, the court will address these challenges when it rules on the defendants' motion for summary judgment.

tion) does not abrogate Kansas' Eleventh Amendment immunity. The plaintiff's judicial economy arguments do not change this result:

> Congress did not abrogate the states' immunity from suit in federal court in 28 U.S.C. § 1367, the statute codifying the common-law doctrines of pendent and ancillary jurisdiction; ... the grant of supplemental jurisdiction contained in 28 U.S.C. § 1367 cannot override Eleventh Amendment immunity.

> These conclusions make Plaintiffs' judicial economy and convenience argument irrelevant. "In any case ... such considerations of policy cannot override the constitutional limitation on the authority of the federal judiciary to adjudicate suits against a State." *Pennhurst*, 465 U.S. at 123, 104 S.Ct. at 920 (court's response to respondents' argument that applying the Eleventh Amendment to pendent claims results in bifurcation of claims and contradicts policies of judicial economy and convenience).

*Doran v. Condon*, 983 F.Supp. 886, 890–91 (D.Nebraska 1997); *see, e.g., Archibeque v. Wylie*, 16 F.3d 415, 1994 WL 41272 (Eleventh Amendment immunity bars plaintiff's § 1983 claim and state law claim against defendant in her official capacity).

The plaintiff's state law claims against the State of Kansas and against Bev Heinrich in her official capacity are dismissed for lack of jurisdiction.

**Notice of Supplemental Authority and Renewed Request for Summary Judgment as to All Claims Based upon Res Judicata and Collateral Estoppel (Dk.100)/Motion to Dismiss (Dk.113).**

In these motions, the defendants seek dismissal of this case, arguing that because the plaintiff's claims have been rejected by Judge Theis, the plaintiff's claims are barred by res judicata principles. In the alternative, the defendants contend that this federal court action is barred by the *Rooker–Feldman* doctrine and its progeny.

The defendants contend that the *Rooker–Feldman* doctrine applies even though the plaintiff's appeal is still pending before the Kansas Court of Appeals. The defendants argue that the doctrine applies to the plaintiff's § 1983 claim against Bev Heinrich because it is "inextricably intertwined" with the claims actually decided by the state court. Alternatively, Heinrich contends that she is entitled to judgment as a matter of law on the plaintiff's § 1983 claim.

The plaintiff filed a response to the defendants' motion for summary judgment but filed no response to the defendants' motion to dismiss.

### Res Judicata

In light of Judge Theis' decision granting the defendants' motion for summary judgment on all of the plaintiff's claims in that case, the defendants move for summary judgment in this case on res judicata and collateral estoppel principles. *See* "Notice of Supplemental Authority and Renewed Request for Summary Judgment as to All Claims Based upon Res Judicata and Collateral Estoppel (Dk.100)." In his response to the defendants' contention that the plaintiff's claims are barred by res judicata principles, the plaintiff, *inter alia*, notes that he has filed an appeal to the Kansas Court of Appeals.

### Analysis

■ The defendants correctly argue that this court must give a Kansas state-court judgment the same preclusive effect as would be given that judgment by the state courts of Kansas. *Ryan v. City of Shawnee*, 13 F.3d 345, 347 (10th Cir.1993) ("Under the full faith and credit statute, federal courts must give the judicial proceedings of any state court the same preclusive effect that those judgments would be given by the courts of that state.") (*citing* 28 U.S.C. § 1738).[4]

However, under Kansas law the pendency of an appeal precludes the applica-

---

4. 28 U.S.C. § 1738, provides in pertinent part: "The ... judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State."

tion of res judicata principles. *See Speer v. Dighton Grain Inc.,* 229 Kan. 272, Syl. ¶ 1, 624 P.2d 952 (1981) ("The doctrine of res judicata cannot arise from a judgment rendered in an action until the time for appeal or modification has passed."). Because the plaintiff's appeal is still pending before the Kansas Court of Appeals, the defendants are not entitled to summary judgment at this time on res judicata principles.

### Rooker–Feldman

In *Mounkes v. Conklin,* 922 F.Supp. 1501 (D.Kan.1996), this court summarized the principles of the *Rooker–Feldman* doctrine:

It is an axiom that federal district courts exercise only original jurisdiction; they lack appellate jurisdiction to review state court decisions reached in judicial proceedings. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). The *Rooker*[FN3] and *Feldman* decisions have become known as the *Rooker–Feldman* doctrine. *Musslewhite v. State Bar of Texas,* 32 F.3d 942, 946 n. 11 (5th Cir.1994), *cert. denied,* 515 U.S. 1103, 115 S.Ct. 2248, 132 L.Ed.2d 256 (1995); *Fariello v. Campbell,* 860 F.Supp. 54, 65 (E.D.N.Y.1994). FN3. In *Rooker,* the plaintiff filed a federal suit to overturn a state court decision which had been affirmed by that state's highest court and which had been denied review by the United States Supreme Court. The federal district court dismissed the case for lack of subject matter jurisdiction, and the Supreme Court affirmed saying: "[N]o court of the United States other than this Court could entertain a proceeding to reverse or modify the judgment for errors of that character. To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original." 263 U.S. at 416, 44 S.Ct. at 150.

In *Rooker,* the Court said that Congress in enacting 28 U.S.C. § 1257 had foreclosed federal courts, other than the Supreme Court, from reviewing final judgments of state courts. 263 U.S. at 416, 44 S.Ct. at 150. Federal district courts, as courts of original jurisdiction, lack authority to review state court decisions. *Worldwide Church of God v. McNair,* 805 F.2d 888, 890 (9th Cir. 1986). *Rooker* effectively serves as "an independent basis for prohibiting collateral attack on state court judgments." *U.S. Industries, Inc. v. Laborde,* 794 F.Supp. 454, 462 (D.Puerto Rico 1992).

In *Feldman,* the Supreme Court extended that rule to a state court's final judgment in a bar admission matter.[FN4] Specifically, the Court in *Feldman* held that federal district courts do not have jurisdiction "over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." 460 U.S. at 486, 103 S.Ct. at 1317. "The *Feldman* rule is soundly and clearly based in the language of 28 U.S.C. § 1257 and in the public policy of federalism." *Facio v. Jones,* 929 F.2d 541, 545 (10th Cir.1991); *see DeVargas v. Montoya,* 796 F.2d 1245, 1255 (10th Cir.1986) (As a matter of federal-state comity, the district court does not look behind the state court judgment), overruled on other grounds, *Newcomb v. Ingle,* 827 F.2d 675, 678 (10th Cir.1987). FN4. In *Feldman,* the plaintiffs wanted waivers from the District of Columbia's rule that required all bar applicants to have degrees from accredited law schools. Unsuccessful in state court, the plaintiffs sued in federal court asserting constitutional right violations.

The reach of the *Rooker–Feldman* doctrine is substantial. It is not limited to the decisions coming from the state's highest court. *Dubinka v. Judges of Superior Court,* 23 F.3d 218, 221 (9th Cir. 1994). Nor does it matter whether the state court decisions are final or interlocutory. *Gentner v. Shulman,* 55 F.3d

87, 89 (2nd Cir.1995). The doctrine precludes federal jurisdiction even when the state court's decision implicates federal constitutional issues, *id.*, or when the plaintiff brings his federal action under federal civil rights statutes, *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir.1993), *cert. denied*, 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994); *see, e.g., Facio v. Jones*, 929 F.2d at 544; *DeVargas v. Montoya*, 796 F.2d at 1255. Finally, the doctrine applies to attempts not only to review directly a state court decision but also to review indirectly a state court decision when the federal claim is "inextricably intertwined" with the merits of the state court's decision. *Dubinka*, 23 F.3d at 221; *Facio*, 929 F.2d at 543.

"The only exception to … the *Rooker–Feldman* doctrine, is where a federal statute authorizes federal appellate review of final state court decisions." *Fariello*, 860 F.Supp. at 65; *see Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir.1993) ("*Rooker–Feldman* 'simply forbids federal district court appellate review of state court judgments in the guise of collateral attacks when no federal statute authorizes such review.' ") (*quoting James S. Liebman, Apocalypse Next Time?: The Anachronistic Attack on Habeas Corpus/Direct Review Parity*, 92 Colum.L.Rev.1997, 2008 n. 46 (1992)), *cert. denied*, 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994). For example, Congress authorized federal district courts to review state court decisions in habeas corpus proceedings. *Ritter*, 992 F.2d at 753; *Fariello*, 860 F.Supp. at 65; *see Illinois Legislative Redistricting Commission v. LaPaille*, 786 F.Supp. 704, 710 (N.D.Ill.) (the exception to *Rooker–Feldman* is habeas corpus cases), *aff'd*, 506 U.S. 948, 113 S.Ct. 399, 121 L.Ed.2d 325 (1992).

*Id.* at 1508–09.

### Res Judicata and *Rooker–Feldman* Distinguished

"Whether the *Rooker–Feldman* doctrine is coextensive with preclusion or extends beyond preclusionary rules is a question that has perplexed courts and commentators." *Hachamovitch v. DeBuono*, 159 F.3d 687, 696 (2nd Cir.1998). *Compare Valenti v. Mitchell*, 962 F.2d 288, 297 (3rd Cir. 1992) ("[T]he *Rooker–Feldman* doctrine has a close affinity to the principles embodied in the legal concepts of claim and issue preclusion."); *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir.1996) ("We have consistently emphasized the distinction between *res judicata* and *Rooker–Feldman* and insisted that the applicability of *Rooker–Feldman* be decided before considering *res judicata*."); *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 n. 1 (8th Cir.1995) ("We note that *Rooker–Feldman* is broader than claim and issue preclusion because it does not depend on a final judgment on the merits. Aside from this distinction the doctrines are extremely similar.").

In *GASH Associates v. Village of Rosemont, Ill.*, 995 F.2d 726 (7th Cir.1993), the Seventh Circuit offered these observations:

Equating the *Rooker–Feldman* doctrine with preclusion is natural; both sets of principles define the respect one court owes to an earlier judgment. But the two are not coextensive. Preclusion in federal litigation following a judgment in state court depends on the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires the federal court to give the judgment the same effect as the rendering state would. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). When the state judgment would not preclude litigation in state court of an issue that turns out to be important to a federal case, the federal court may proceed; otherwise not. *Harris Trust & Savings Bank v. Ellis*, 810 F.2d 700, 704–06 (7th Cir. 1987). The *Rooker–Feldman* doctrine, by contrast, has nothing to do with § 1738. It rests on the principle that district courts have only original jurisdiction; the full appellate jurisdiction over judgments of state courts in civil

cases lies in the Supreme Court of the United States, and parties have only a short time to invoke that jurisdiction. The *Rooker–Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

995 F.2d at 728. *See Rooker,* 263 U.S. at 415, 44 S.Ct. 149 ("If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication."); *In re Audre, Inc.,* 216 B.R. 19, 29 (9th Cir.BAP 1997) (*Rooker–Feldman* doctrine applies to state court judgments during pendency of appeal, even in California where judgments are not final until the period during which an aggrieved party may file an appeal has expired or in cases on appeal, the judgment has been affirmed and the case remitted).

 Despite unresolved questions concerning the congruence of the *Rooker–Feldman* doctrine and res judicata and collateral estoppel principles, some legal propositions are not disputed. "The *Rooker–Feldman* doctrine differs from preclusion in certain critical ways. For example, preclusion defenses are generally affirmative and can be waived; *Rooker–Feldman* is jurisdictional and cannot." *Hachamovitch,* 159 F.3d at 696 n. 2. *See Long v. Shorebank Development Corp.,* 182 F.3d 548, 554–55 (7th Cir.1999) ("Because the *Rooker–Feldman* doctrine is jurisdictional in nature, its applicability must be deter-

mined before considering the defendants' arguments regarding the applicability of res judicata."); *Centres, Inc. v. Town of Brookfield, Wis.,* 148 F.3d 699, 703 (7th Cir.1998) ("Because the *Rooker–Feldman* doctrine is jurisdictional in nature, its applicability ends the litigation in federal court and the court has no authority to address affirmative defenses, including res judicata. Therefore, as our colleague in the district court implicitly recognized, the applicability of *Rooker–Feldman* must be determined before considering res judicata. If *Rooker–Feldman* applies, a res judicata claim must not be reached. The rule of thumb that we have just described helps, in most instances, in determining whether the *Rooker–Feldman* doctrine or preclusion principles are the appropriate approach to the problem at hand.") (citations omitted).

### Rooker–Feldman Doctrine and Parallel Proceedings

 Although the defendants correctly note that the pendency of an appeal does not preclude the operation of the *Rooker–Feldman* doctrine, the defendants do not address the issue of whether that doctrine applies when a parallel state case is proceeding at the same time a federal case is pending. Whether the *Rooker–Feldman* doctrine applies to parallel or concurrent state and federal proceedings is an infrequently discussed issue. In the typical case discussing the *Rooker–Feldman* doctrine, a litigant unhappy with the decisions of the state district or appellate court simply commences an action in federal district court similar or identical to the one just lost in state court—essentially hoping to achieve greater success on the second try in a more obliging forum. Subject to limited exceptions where Congress has authorized collateral review of state court judgments, such a strategy runs quickly ashore on the shoals of the *Rooker–Feldman* doctrine.

This case presents a different scenario. In this case, the plaintiff actively pursued

two essentially identical causes of action in both state and federal court at the same time, and this he was entitled to do. "The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction, for both the state and Federal courts have certain concurrent jurisdiction over such controversies, and when they arise between citizens of different states the Federal jurisdiction may be invoked, and the cause carried to judgment, notwithstanding a state court may also have taken jurisdiction of the same case." *McClellan v. Carland,* 217 U.S. 268, 281, 30 S.Ct. 501, 54 L.Ed. 762 (1909). In this case the state district court, the first of the two cases, proceeded to judgment first. The issue is whether that judgment in Shawnee County state district court triggers dismissal under *Rooker–Feldman.*

In *Kline v. Burke Const. Co.,* 260 U.S. 226, 230, 43 S.Ct. 79, 67 L.Ed. 226 (1922), the Supreme Court stated this about parallel state and federal litigation:

> Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res adjudicata by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case.

260 U.S. at 229, 43 S.Ct. 79.

> The Construction Company, however, had the undoubted right under the statute to invoke the jurisdiction of the federal court and that court was bound to take the case and proceed to judgment. It could not abdicate its authority or duty in favor of the state jurisdiction. *Chicot County v. Sherwood,* 148 U.S. 529, 533, 13 Sup.Ct. 695, 37 L.Ed. 546; *McClellan v. Carland,* 217 U.S. 268, 282, 30 Sup.Ct. 501, 54 L.Ed. 762. But, while this is true, it is likewise true that the

state court had jurisdiction of the suit instituted by petitioners.

> Indeed, since the case presented by that suit was such as to preclude its removal to the federal jurisdiction, the state jurisdiction in that particular suit was exclusive. It was, therefore, equally the duty of the state court to take the case and proceed to judgment. There can be no question of judicial supremacy, or of superiority of individual right.

260 U.S. at 234–35, 43 S.Ct. 79.

More recently, the Seventh Circuit has opined that judgment in a parallel state proceeding does not bar the federal case under the *Rooker–Feldman* doctrine:

> If Dickie had moved first for his litigation expenses in the Wisconsin circuit court, and only after his motion was denied had filed suit in federal district court, federal jurisdiction would have been barred by the *Rooker–Feldman* doctrine. *Ritter v. Ross,* 992 F.2d 750, 752–55 (7th Cir.1993). For he would in effect have been asking the federal district court to overturn the decision of the Wisconsin circuit court, and the U.S. Supreme Court is the only federal court that has jurisdiction to review state court decisions, except by way of habeas corpus. *Buckley v. Illinois Judicial Inquiry Board,* 997 F.2d 224, 227 (7th Cir.1993). But when separate cases proceed in parallel in state and federal court, a state court judgment is conclusive on the federal court only by operation of res judicata, 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4247 at p. 124 (1988), not invoked by the City of Tomah. Whether it could be invoked here would depend on whether under Wisconsin law a judgment which has become final in the trial court but the appeal from which is pending in the appellate court has res judicata effect. The dominant though not universal rule is that it does. 18 Wright, Miller & Cooper, *supra,* § 4433, at ¶. 308–15 (1981); *Restatement (Second) of Judg-*

*ments* § 13, comment f, at p. 135 (1980); *Kurek v. Pleasure Driveway & Park District*, 557 F.2d 580, 595 (7th Cir. 1977), *vacated on other grounds*, 435 U.S. 992, 98 S.Ct. 1642, 56 L.Ed.2d 81 (1978); *Martin v. Malhoyt*, 830 F.2d 237, 264–65 (D.C.Cir.1987). There is no published Wisconsin state court decision on the question, but in light of the city's waiver we need not attempt to resolve it. *Dickie v. City of Tomah*, 999 F.2d 252, 254 (7th Cir.1993).

In contrast, without expressly addressing whether the *Rooker–Feldman* doctrine applies to parallel state and federal proceedings, the Third Circuit recently held that the Full Faith and Credit Act and the *Rooker–Feldman* doctrine barred the federal court from vacating the judgment entered in what appears to be a parallel state class action. *See In re Gen. Motors Corp. Products Liab. Litigation*, 134 F.3d 133, 141–43 (3rd Cir.1998).

Although the plaintiff filed no response to the defendants' argument that this case should be dismissed under *Rooker–Feldman* principles, the defendants have not persuaded this court that the doctrine applies in a case such as this one in which the plaintiff has simultaneously pursued parallel state and federal cases.

The defendants' motions are denied without prejudice.

**Defendants' Motion for Summary Judgment (Dk.77):**

Given the pendency of the plaintiff's appeal in state court in a virtually identical case and the imminence of a decision that may potentially resolve most, if not all, of the issues in this case, the court does not at this time intend to devote its scarce resources to addressing the merits of the defendants' motion for summary judgment. From a practical standpoint, the press of this court's busy criminal docket makes it unlikely that the court will have a sufficient block of time to decide the defendants' motion for summary judgment on the merits prior to the time the Kansas Court of Appeals decides the plaintiff's appeal.

The parties shall immediately notify this court when the Kansas Court of Appeals issues its decision. At that time, if the decision is unfavorable to the plaintiff, the plaintiff shall notify this court if he intends to seek review from the Kansas Supreme Court. Upon receipt of any such notice, this court will resolve the remaining issues in this case.

IT IS THEREFORE ORDERED that the "Defendant's motion to dismiss (Dk.63)" is granted in part and denied in part as set forth in the body of this opinion. This court has jurisdiction to consider the plaintiff's ADA claims against the defendants. The plaintiff's state law claims against the State of Kansas and against Bev Heinrich in her official capacity are dismissed for lack of jurisdiction. The defendants' motion to dismiss the plaintiff's claims against Bev Heinrich in her individual capacity is denied without prejudice as set forth in the body of this opinion.

IT IS FURTHER ORDERED that the defendants' "Motion for Summary Judgment as to breach of contract claims based upon res judicata and collateral estoppel (Dk.98)" is denied as moot in light of the plaintiff's concession.

IT IS FURTHER ORDERED that the defendants' Motion to Dismiss (Dk.113) the plaintiff's remaining claims under the *Rooker–Feldman* doctrine is denied without prejudice.

IT IS FURTHER ORDERED that the defendants' "Notice of Supplemental Authority and Renewed Request for Summary Judgment as to All Claims Based upon Res Judicata and Collateral Estoppel (Dk.100)" is denied without prejudice.